UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JEFFREY D. PEREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-00595-JMS-DLP |
| | ) | |
| SAMUEL J. BYRD, | ) | |
| WEXFORD OF INDIANA, LLC., | ) | |
| KIM HOBSON, | ) | |
| AMY WRIGHT, | ) | |
| THOMAS WELLINGTON, | ) | |
| MICHAEL MITCHEFF, | ) | |
| FRANK VANIHEL, | ) | |
| | ) | |
| Defendants. | ) | |

**Order on Defendants' Motions for Summary Judgment**

Plaintiff Jeffrey Perez is an inmate at the Wabash Valley Correctional Facility in Carlisle, Indiana. He contends Wabash Valley jail and medical officials were deliberately indifferent to treating the pain associated with his "clubfoot." Defendants now move for summary judgment on the grounds that Mr. Perez has failed to show any of the defendants were deliberately indifferent.

Summary Judgment is appropriate for all of the Defendants except for Dr. Michael Mitcheff and Dr. Samuel Byrd. A jury could find that both doctors continued in a course of ineffective treatment despite Mr. Perez's worsening pain. Accordingly, Thomas Wellington and Frank Vanihel's (the "Jail Officials") motion for summary judgment, dkt. [56], is **granted**. Samuel Byrd, Wexford of Indiana, LLC, Kim Hobson, Amy Wright, and Michael Mitcheff's (the "Medical Officials") motion for summary judgment, dkt. [47], is **granted in part** and **denied in part**.

## I. Background

The facts are either undisputed or presented in the light most favorable to Mr. Perez, the party opposing summary judgment. *Baptist v. Ford*, 827 F.3d 599, 599 (7th Cir. 2016). As for disputed facts presented in Mr. Perez's favor, the court does not vouch for the objective truth of these facts; the court simply assumes them to be true for purposes of ruling on this motion. *See Stark v. Johnson & Johnson*, 10 F.4th 823, 825 (7th Cir. 2021).

### A.   Overview

This case involves the medical condition clubfoot, also called Congenital Talipes Equinovirus. Dkt. 49-4, Affidavit of Samuel Byrd ¶ 5. Clubfoot is a congenital foot abnormality in which the foot points down and inward. *Id.* Treatment usually consists of casting, bracing, or in more serious cases, surgery. *Id.*

Mr. Perez was born with clubfoot in both feet. Dkt. 2, Complaint ¶ 14; Dkt. 52, Medical Records at 43. In Mr. Perez's words, his feet are "twisted out of shape and position" and as a result, he has experienced significant pain and a lack of mobility. Dkt. 63, Plaintiff's Brief in Response at 3, 4.[1] Mr. Perez typically stays in bed most of the day and is confined to a wheelchair when he ambulates. Dkt. 56-7, Deposition of Jeffrey Perez at 8.

He has undergone numerous surgeries to try and help correct the problem. Dkt. 52 at 1. As a child, he had surgery where the doctor "broke all [his] bones" and refixed them with pins. Dkt. 56-7 at 12. In 2007, while incarcerated in Michigan City, his toes started to curl up, and so he

---

[1] Mr. Perez's complaint and briefs are signed under the penalties of perjury, and so the Court considers them as evidence. *See Owens v. Hinsley*, 635 F.3d 950, 954-55 (7th Cir. 2011) (noting that a verified response in opposition to motion for summary judgment was admissible even though it was not an affidavit because "a declaration under [28 U.S.C.] § 1746 is equivalent to an affidavit for purposes of summary judgment"); *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (concluding that a "verified response constitutes competent evidence to rebut the defendants' motion for summary judgment").

had corrective surgery again. *Id.* And later when he arrived at Wabash Valley, sometime around 2015, he had another surgery where doctors removed a piece of bone from his foot. *Id.* at 14.

At all times relevant to this case, Mr. Perez was incarcerated at Wabash Valley and under the treatment of Dr. Samuel Byrd. Dr. Byrd is the medical director at Wabash Valley and has served in that role at least since April 2017. Dkt. 49-4 ¶ 2. Dr. Byrd was employed by Wexford, the facility's medical provider. *Id.*

### B. Early Treatment and Denial of Offsite Consult

The relevant time frame in this case begins in July 2017. On July 12, 2017, Dr. Byrd saw Mr. Perez for a chronic care appointment related to a number of conditions, including Mr. Perez's clubfoot. *Id.* ¶ 6. Dr. Byrd ordered x-rays of Mr. Perez's feet and increased the dosage of his Neurontin, the medicine he was taking to help control the neuropathic pain in his feet. *Id.* The x-rays eventually revealed that his condition was stable. *Id.* ¶ 6. At follow-up appointments in December 2017 and May 2018, Dr. Byrd and Mr. Perez discussed how to manage his pain, which included maintaining a prescription for Neurontin and using a wheelchair and cane to ambulate. *Id.* at ¶ 7, 8.

Mr. Perez's pain seemed to worsen in September 2018. On September 26, he was seen in nursing sick call after reporting pain in both of his ankles and feet. *Id.* ¶ 9. Mr. Perez's feet were tender, weak, and swollen, and he did not have normal range of movement in his feet. *Id.* Dr. Byrd was contacted, and he ordered another set of x-rays. *Id.*

Dr. Byrd met with Mr. Perez on November 7, 2018, to discuss the x-rays and further treatment. *Id.* ¶ 10. Mr. Perez requested to be seen by an off-site specialist for a second opinion. *Id.* Dr. Byrd contacted Dr. Elliott Kleinman, the doctor who had performed two previous surgeries

on Mr. Perez's feet. *Id.* After discussing Mr. Perez's condition with Dr. Kleinman, Dr. Byrd submitted an outpatient request for Mr. Perez to attend a podiatry consult with Dr. Kleinman. *Id.*

Dr. Byrd does not have the authority to prescribe any and all medication. *Id.* ¶ 19. Nor does he have the authority to send patients offsite to meet with a specialist. *Id.* Even as medical director at Wabash Valley, he is required to seek authorization from the regional director when prescribing certain types of medications and sending inmates to offsite specialists. *Id.* The regional director of Wexford at the time was Dr. Michael Mitcheff. Dkt. 49-5, Affidavit of Michael Mitcheff ¶ 2. Dr. Mitcheff was responsible for communicating with facility doctors and approving requests for prescriptions and offsite consultations. *See id.* ¶¶ 4, 8.

Dr. Mitcheff reviewed and ultimately deferred the outpatient request submitted by Dr. Byrd. *Id.* ¶ 8. Dr. Mitcheff was aware that Mr. Perez had previously undergone numerous surgeries and was now reporting swelling, tingling, and throbbing in both feet from ankle to toe. *Id.* However, according to Dr. Mitcheff, "there is very rarely a 'cure' for this disease." Given that Mr. Perez's condition was severe and he was already prescribed Neurontin, Dr. Mitcheff opted to continue "onsite conservative treatment" at Wabash Valley. *Id.*

**C.   Denial of Offsite Evaluation and Discontinuation of Neurontin**

Dr. Byrd next met with Mr. Perez in January of 2019. Dkt. 49-4 ¶ 11. Dr. Byrd explained to Mr. Perez that the referral had be deferred and based on the previous evaluations and Mr. Perez's complicated history, Dr. Byrd did not believe there were any surgical procedures would resolve his condition. *Id.* Dr. Byrd started Mr. Perez on Cymbalta, another medication for his pain. *Id.* Dr. Byrd wanted to wean Mr. Perez off of Neurontin due to the potential for abuse in the correctional setting. *Id.* ¶ 14. Finally Dr. Byrd submitted an outpatient request for Mr. Perez to be seen at the Hanger Clinic for an evaluation regarding a possible pair of orthotic shoes. *Id.*

Dr. Mitcheff deferred the request to be seen for orthotic shoes. Dkt. 49-5. ¶ 9. Because Mr. Perez was not ambulatory and complained of pain when he wore shoes, Dr. Mitcheff concluded a pair of orthotic shoes would not be helpful. *Id.* Mr. Perez did receive an elastic ankle support following the denial of the referral. Dkt. 49-4 ¶ 10.

Mr. Perez saw Dr. Byrd again in May. *Id.* ¶¶ 13. No changes were made to Mr. Perez's treatment plan during this visit, though Dr. Byrd continued to wean Mr. Perez off Neurontin. *Id.*

Mr. Perez began complaining about his treatment. On June 3, 2019, he submitted a healthcare request asking why Neurontin was being discontinued. Dkt. 49-7, Affidavit of Amy Wright ¶ 7. Amy Wright, the director of nursing at Wabash Valley, responded that his prescription had been decreased to a lower dose based on Dr. Byrd's orders. *Id.*

In August, Dr. Byrd submitted a request to keep Mr. Perez on Neurontin; however, Dr. Mitcheff deferred this request. Dkt. 49-5 ¶ 12. Dr. Mitcheff declined to continue the prescription because Neurontin was known to be trafficked in the correctional setting and because Mr. Perez had previously been diagnosed with a substance abuse disorder, so long term treatment was not good. *Id.* Mr. Perez's wife called Nurse Wright to inquire why he was being taken off Neurontin, and once again, Nurse Wright explained it was pursuant to the treating physician's orders. *Id.* ¶ 8. By September, Mr. Perez was experiencing extreme pain, and so he filed a grievance requesting to be placed back on Neurontin. Dkt. 73-1 at 35. The grievance was eventually relayed to the Health Services Administrator, Kimberly Hobson, who denied the request explaining it was the provider's decision not to re-order the prescription. Dkt. 49-6, Affidavit of Kimberly Hobson ¶ 7.

Mr. Perez saw Dr. Byrd again on October 9, 2019. Dkt. 49-4 ¶ 12. Dr. Byrd was continuing to wean Mr. Perez off Neurontin, and because the previous use of Cymbalta was ineffective,

Dr. Byrd prescribed a new medication, Keppra. *Id.* ¶ 14. Dr. Byrd also ordered another set of x-rays. *Id.*

### D. Escalation of Mr. Perez's Pain

Mr. Perez's pain continued to get worse. On March 25, 2020, Mr. Perez saw Dr. Byrd and complained that something was wrong because he noticed new swelling in his feet. *Id.* ¶ 15. Plaintiff requested to be placed back on Neurontin, as Keppra was ineffective. *Id.* Dr. Byrd did not submit a request for Neurontin; instead, he placed him on a new medication—Depakote. *Id.* On April 13, 2020, he filed a grievance requesting that he receive his medication by distribution rather than by sick call because it hurt to put shoes on and ambulate to the sick-call window. Dkt. 49-7 ¶ 9. Nurse Hobson and Nurse Wright discussed the grievance and ultimately denied it because Mr. Perez had been given specially fitted shoes in 2019 and they were required per the orders of Dr. Byrd. *Id.* ¶ 10; *see also* Dkt. 49-6 ¶ 9; *see* dkt. 56-6.

In May 2020, Mr. Perez reported severe pain in both legs, and told Dr. Byrd the Depakote was not working. Dkt. 49-4 ¶ 16. He also told him he could not wear shoes as his pain was severe. *Id.* Dr. Byrd increased his dosage of Depakote.

The next visit with Dr. Byrd occurred on July 1, 2020. *Id.* ¶ 17. Mr. Perez continued to complain of pain. *Id.* He requested that Dr. Byrd refer him offsite to see a podiatrist, but Dr. Byrd explained that was not possible because Dr. Kleinman no longer worked at the nearby hospital. *Id.* He also reiterated that Mr. Perez lacked an identifiable need for surgery as previous surgeries were not successful. *Id.* Dr. Byrd, however, ordered a new set of x-rays and submitted a request to place Mr. Perez back on Neurontin. *Id.*

Following this meeting, Mr. Perez filed another grievance, requesting to be seen by an offsite specialist. *Id.* Dkt. 49-6 ¶ 10. The grievance was assigned to Thomas Wellington, who at

the time was the acting grievance specialist. Dkt. 56-1, Affidavit of Thomas Wellington ¶ 22. He contacted Nurse Hobson, who recommended that the grievance be denied because Dr. Byrd had reviewed the x-ray results and concluded the hardware in his foot was intact. Dkt. 49-6 ¶ 11. The grievance was ultimately denied by Mr. Wellington. Dkt. 56-4.

Mr. Perez saw Dr. Byrd again on August 5, 2020. Dkt. 49-4 ¶ 18. Dr. Byrd explained that the x-rays failed to show any complication from a past surgical procedure, and it remained unlikely that he would become ambulatory with any surgery on his feet. *Id.* Mr. Perez reported that he would rather have his feet amputated than continued to deal with the pain he is experiencing. *Id.*

Mr. Perez followed this meeting with another grievance. Dkt. 49-6 ¶ 13. He complained that he was being taken off Neurontin which had helped control his pain. *Id.* Mr. Wellington once more relayed the grievance concerns to Nurse Hobson, who recommended denying the grievance because Neurontin had not been approved by the medical provider. *Id.* ¶ 13. Similar to the others, this grievance was likewise denied. Dkt. 56-5.

Mr. Perez's prescription for Neurontin was renewed in September 2020. Dkt. 49-5 ¶ 13. Nonetheless, he brought this lawsuit on November 10, 2020. Dkt. 2. He alleged that Dr. Byrd, Dr. Mitcheff, Nurse Wright, Nurse Hobson. Mr. Wellington, Warden Vanihel, and Wexford all were deliberately indifferent to his medical needs. *See* Dkt. 2. He contends that he has complained about his deteriorating condition for several years and was consistently denied seeing a specialist despite his toes beginning to curl under his feet. Dkt. 63 at 4. On every single occasion, Mr. Perez "unequivocally" complained of the difficulties and pain he was having with his feet. *Id.*

## II. Legal Standard

Summary judgment is a procedure for resolving a case short of a trial. It is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled

to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Pack v. Middlebury Com. Schools*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could find in favor of the nonmoving party. *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And "material facts" are those that might affect the outcome of the suit. *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015).

Once the moving party submits a properly supported motion for summary judgment, the burden then shifts to the nonmoving party to demonstrate there is a factual dispute or that the moving party is not entitled to judgment as a matter of law. *See* S.D. Ind. L. R. 56-1(b); *see also Weaver*, 28 F.4th at 820. "[T]he nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that set forth specific facts showing that there is a genuine [dispute] for trial." *Burton v. Kohn*, 934 F.3d 572, 579 (7th Cir. 2019).

The record at summary judgment consists only of the admissible evidence submitted by the parties. *See* S.D. Ind. L.R. 56-1(e) ("A party must support each fact the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence."). The Court does not "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trustees of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017). Admissible evidence can include a *pro se* party's pleadings or briefs so long as they are signed under the penalty of perjury. *See Jones v. Van Lanen*, 27 F.4th 1280, 1285 – 86 (7th Cir. 2022) ("[T]he law allows verified complaints— containing not just allegations but sworn statements of fact—to serve as evidence for purposes of summary judgment."); *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) ("By declaring under the penalty of perjury that the response was true, [a plaintiff can] convert [a] response . . . into an affidavit.").

The purpose of summary judgment is to determine the need for trial. The record is viewed in the light most favorable to the nonmoving party. *Khungar v. Access Community Health Network*, 985 F.3d 565, 572 – 73 (7th Cir. 2021). That means all facts are construed and all inferences are drawn in favor of the nonmoving party. *See v. Illinois Gaming Board*, 29 F.4th 363, 368 (7th Cir. 2022). The goal is not to decide which party's facts are more likely true; it is only to decide whether a trial is necessary. *Gupta v. Melloh*, 19 F.4th 990, 996 (7th Cir. 2021). If a jury could rationally find in favor of the nonmoving party, then summary judgment must be denied. *E.g. Jones*, 27 F.4th at 1285. If no rational jury could find in favor of the non-moving party, then summary judgment must be granted. *E.g. Pulera v. Sarzant*, 966 F.3d 540, 551 – 52 (7th Cir. 2020).

### III. Discussion

The Jail Officials contend summary judgment is appropriate because they were not personally involved in Mr. Perez's treatment, and they are entitled to rely on the medical processional's treatment. The Medical Officials argue summary judgment is appropriate because there is no evidence they were deliberately indifferent to Mr. Perez's medical needs. Mr. Perez responds that there is sufficient evidence to present his claims to a jury.

The Eighth Amendment prohibits "cruel and unusual punishments." *Thomas v. Blackard*, 2 F.4th 716, 719 (2021). Prison officials violate this prohibition when they display "deliberate indifference" to a prisoner's serious medical needs. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 234 (7th Cir. 2021) ("The Eighth Amendment's ban on cruel and unusual punishments obligates prison officials to provide medical care to prisoners in their custody."); *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 483 (7th Cir. 2022) ("A delay in treating non-life threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or

unnecessarily prolonged an inmate's pain." (internal quotations and citations omitted)); *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (doctor's decision to continue a known course of ineffective treatment violates the Eighth Amendment).

Deliberate indifference includes both an objective and subjective component. *Thomas*, 2 F.4th at 719. To succeed on a deliberate indifference claim, a prisoner must show that he (1) suffered from an objectively serious medical condition, and (2) the doctor was deliberately indifferent to that condition. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Greeno*, 414 F.3d at 652 – 53.

Defendants do not genuinely dispute that Mr. Perez's clubfoot is not a serious condition. *See* 49-4 ¶ 20 ("Plaintiff has had a lifelong condition that causes pain and foot weakness[.]"). And given that Mr. Perez's has had multiple surgeries, cannot ambulate without assistance, and is constantly in pain, his clubfoot constitutes a serious injury. *See* dkt. 56-7; dkt. 52 at 1. Therefore this case comes down to whether Mr. Perez has sufficient evidence that each defendant was deliberately indifferent. *Berry*, 604 F.3d at 440.

### A. Warden Vanihel and Mr. Wellington

Summary judgment is appropriate on Mr. Perez's claims against Warden Vanihel and Mr. Wellington. Their only involvement was responding to Mr. Perez's grievances and complaints[2] that he was not receiving adequate medical attention. Dkt. 56-1 ¶¶ 5, 20 – 34; Dkt. 56-2 ¶ 10. Neither one is a medical official and neither can provide medical treatment. Dkt. 56-1 ¶¶ 12, 13; Dkt. 56-2 ¶¶ 6, 7. As non-medical officials, there were they were entitled to rely on the medical professionals' opinions, and their response to Mr. Perez's grievances and complaints was not so

---

[2] Mr. Perez contends that he wrote Warden Vanihel letters seeking help. Warden Vanihel disputes this, but the Court accepts Mr. Perez's version of the events as true for the purposes of this motion. *Stark*, 10 F.4th at 825.

plainly inadequate such that a jury could find them liable. *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 (7th Cir. 2021) ("[A] plaintiff can show that [a] professional disregarded [a medical] need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under the circumstances.") (cleaned up); *see also Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) (affirming the grant of summary judgment to non-medical defendants where they investigated the prisoner's complaints, sought guidance from medical officials, and relied on the judgment of prison physicians).

Mr. Perez contends otherwise. As for Mr. Wellington, Mr. Perez asserts he was aware of his serious medical needs and was deliberately indifferent to those needs. But that is the extent of his response, and conclusory legal assertions are insufficient to withstand summary judgment. *Weaver v. Champion PetFoods USA Inc.,* 3 F.4th 927, 934 (7th Cir. 2021) ("[The nonmoving party] may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits[.]"). As for Warden Vanihel, Mr. Perez asserts he was amply notified of Mr. Perez's foot problems through grievances and requests to see specialist, and his failure to act violated his duty to provide adequate medical treatment to prisoners in his custody. But, again, Warden Vanihel was free to defer to the medical professionals, and the record lacks sufficient evidence to demonstrate that Warden Vanihel was "essentially criminally reckless" in his response. *Stewart v. Wexford Health Sources*, *Inc.*, 14 F.4th 757, 763 (7th Cir. 2021).

Accordingly, Mr. Wellington and Warden Vanihel's motion for summary judgment on Mr. Perez's deliberate indifferent claims is **granted**.

### B. Wexford

Summary judgment is likewise appropriate for Mr. Perez's claims against Wexford. To show a violation of his Eighth Amendment rights against Wexford, a private corporation, Mr. Perez must demonstrate the violation was caused by a corporate policy or a widespread practice or custom. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 652 (7th Cir. 2021) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 – 91 (1978)). He has produced no evidence of either. He has only asserted that Wexford has an unofficial policy of saving money by denying requests for offsite treatment. Such an assertion is not sufficient to survive summary judgment. *Weaver,* 3 F.4th at 934. As such, Wexford's motion for summary judgment on Mr. Perez's *Monell* claim is **granted**.

### C. Nurse Wright and Nurse Hobson

Nurse Wright and Nurse Hobson are entitled to summary judgment as well. As for Nurse Hobson, she reviewed, investigated, and responded to the grievance team concerning Mr. Perez's four medical-related grievances. Dkt. 49-6, ¶ 5. For each one, she provided a recommendation based on her review of the medical records and the physicians' orders. *Id.* ¶¶ 7, 9, 11, 13. As for Nurse Wright, she addressed three healthcare requests related to Mr. Perez's condition, she discussed with his wife the decision to wean him off Neurontin, and she collaborated with Nurse Hobson on one of Mr. Perez's grievances. Dkt. 49-7 ¶¶ 7 – 12. In each instance, she too based her decision off Mr. Perez's medical files and the physicians' orders. *Id.* Mr. Perez's clubfoot is unquestionably severe, and the record demonstrates it requires advanced treatment, so both nurses were entitled to rely on the physicians' orders. *Brown v. Osmundson*, --- F.4th ----, No. 21-1647, 2022 WL 2301878, at *5 (7th Cir. June 27, 2022) (nurses may defer to physicians on conditions that require advance treatment); *Perez v. Fenoglio*, 792 F.3d 768, 779 (7th Cir. 2015) (nurses may

generally defer to instructions given by physicians). Given this record, no jury could find either was deliberately indifferent.

Mr. Perez responds that both Nurse Hobson and Nurse Wright were the nurses in charge, and they ignored his serious conditions. But they were entitled to rely on the physicians' orders. And given their review of his complaints and the seriousness of Mr. Perez's condition, no jury could rationally find that their deference was "blind" or "unthinking." *Reck*, 27 F.4th at 485.

Nurse Hobson's and Nurse Wright's motion for summary judgment is therefore **granted**.

### D. Dr. Byrd and Dr. Mitcheff

Summary judgment is not appropriate on Mr. Perez's claims against Dr. Byrd and Dr. Mitcheff. Construing the record in Mr. Perez's favor, as the Court must, a jury could rationally conclude both doctors continued in a course of ineffective treatment despite Mr. Perez's worsening pain.

Mr. Perez's clubfoot is sufficiently serious: his feet are "twisted out of shape and position" and he lacks mobility and constantly is in pain. Dkt. 63 at 3 – 4. He has undergone numerous surgeries to help his condition. Dkt. 52 at 1. And critical here, beginning in 2017, his toes allegedly began curling up and his pain began to worsen. In July 2017, Dr. Byrd increased his Neurontin prescription because the pain was increasing. Dkt. 49-4 ¶ 6. In September 2018, Mr. Perez complained that his feet were tender, weak, and swollen. *Id.* ¶ 9. By September 2019, Mr. Perez was experiencing extreme pain. Dkt. 73-1 at 35. And by August 2020, he reported that he would rather have his feet amputated than continued to deal with the pain he is experiencing. Dkt. 49-4 ¶ 18. His medical notes reflect that throughout these visits, he constantly reported that he was suffering from throbbing, aching, tingling, and "ice-pick like pain." Dkt. 52 at 1 – 24. No doubt

chronic conditions are difficult to manage. But a jury could view this record and conclude that Mr. Perez's symptoms, particularly his pain, were not remaining stable but in fact were getting worse.

Mr. Perez has also put forth evidence that Dr. Mitcheff and Dr. Byrd were deliberately indifferent to his condition. Dr. Mitcheff was responsible for communicating with facility doctors and approving requests for prescriptions and offsite consultations. Dkt. 49-5, ¶¶ 4, 8. In November 2018, he deferred Dr. Byrd's request for Mr. Perez to be seen by Dr. Kleinman (who had performed Mr. Perez's previous surgeries); in January 2019, Dr. Mitcheff deferred Dr. Byrd's request for Mr. Perez to be seen for a pair of orthotic shoes; and in August 2019, he deferred Dr. Byrd's request to treat Mr. Perez with Neurontin. *Id.* ¶ 8, 9, 12. Despite Mr. Perez's worsening condition, Dr. Mitcheff opted for "onsite conservative treatment." *Id.* ¶ 8.

As for Dr. Byrd, he too participated in Mr. Perez's treatment. After his outpatient requests were denied in November 2018 and January 2019, he refused to submit another outpatient request despite constantly assuring Mr. Perez that he would and despite observing Mr. Perez's worsening condition. Dkt. 56 at 7 ("Dr. Byrd kept giving me the runaround . . . he kept telling me he was going to get me to go back to see the same guy that did my surgery . . . he kept telling me that he was going to make sure I got to the outside doctor. It just never happened."). Dr. Byrd continued in the course of prescribing him medication, even though he now acknowledges that treatment of clubfoot usually consists of casting, bracing, or in more serious cases, surgery. Dkt. 49-4 ¶ 5. He also continued in this course of treatment despite Mr. Perez's complaints that his pain was getting worse. Dkt. 52 at 1 – 24.

On this record, a jury could find deliberate indifference based on the doctors' decision to opt for "onsite conservative" treatment of Mr. Perez's clubfoot over the course of nearly three years. *Greeno*, 414 F.3d at 654 – 55 (reversing summary judgment and finding a question of fact

as to whether a director of health services was deliberately indifferent when she ignored frequent complaints of severe pain and requests to be seen by a specialist); *see also Perez v. Marandet, et al.*, No. 3:15-c-v-496-JD-MGG, 2018 WL 4151001, at *9 – 10 (N.D. Ind. Aug. 29, 2018) (denying summary judgment to doctor and nurse who treated Mr. Perez's clubfoot because even though the doctor approved of him seeing a podiatrist, they ignored his Mr. Perez's pain); *Hall v. Wexford of Indiana, LLC, et al.*, No. 1:19-cv-40340 RLY-MPB (S.D. Ind. Sep. 28, 2021) (Dkt. 100) (denying summary judgment to doctor who failed to treat an inmate's pain associated with his foot ulcers for nearly three years); *cf. Michalski v. Ruiz*, No. 3:17-cv-1516(VAB), 2020 WL 509565, at *7 (D. Conn. Jan. 31, 2020) (granting summary judgment to doctor who treated clubfoot where the doctor tried to alleviate inmate's pain by arranging for multiple podiatry consults, providing shoe inserts, and prescribing plantar fascia stretching).

The doctors insist otherwise. They contend summary judgment is appropriate because they provided constitutionally adequate treatment based on all of Mr. Perez's chronic care appointments and their opinions that his clubfoot was so severe that no surgical procedures would help. Dkt. 48 at 29, 30. This argument rests on the number of times Mr. Perez was seen, the various medications he was prescribed, the fact he was given a wheelchair to ambulate, and the number of x-rays that were ordered. A jury could rationally conclude as much. But as explained before, a jury could also conclude that the doctors ignored his pain and provided him with an ineffective course of treatment despite his worsening symptoms. Because either outcome could be reached, whether the doctors continued a course of ineffective treatment is best left in the hands of a jury. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts[.]").

The doctors also argue that there is no evidence of how or why their actions could be considered a departure from substantially accepted medical practices. *See Brown*, 2022 WL 2301878, at *4. But the record is not so clear to as to warrant judgment as a matter of law. There is ample evidence that Mr. Perez was facing increasingly excruciating pain and the treatment was ineffective. On top of that, there is evidence that Dr. Byrd himself believed offsite treatment was appropriate, and there is evidence that Dr. Kleinman requested to see Mr. Perez in November of 2018.

Accordingly, summary judgment on Mr. Perez's claims against Dr. Mitcheff and Dr. Byrd is **denied**.

### IV. Conclusion

For those reasons, Warden Vanihel and Mr. Wellington's motion for summary judgment, dkt. [56], is **granted**. Dr. Byrd, Wexford, Nurse Hobson, Nurse Wright, and Dr. Mitcheff's motion for summary judgment, dkt. [47], is **granted in part and denied in part**. It is **granted** with respect to Mr. Perez's claims against Wexford, Nurse Hobson, and Nurse Wright. It is **denied** with respect to Mr. Perez's claims against Dr. Byrd and Dr. Mitcheff. Mr. Perez's deliberate indifference claims based on the doctors' continued course of treatment will proceed to trial.

The clerk is **directed** to **terminate** Wexford of Indiana, LLC, Kim Hobson, Amy Wright, Thomas Wellington, and Frank Vanihel from the docket. No partial final judgment will be entered at this time.

**SO ORDERED.**

Date: 7/6/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

JEFFREY D. PEREZ
171101
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Amanda Jo Holbrook
Office of the Indiana Attorney General
amanda.holbrook@atg.in.gov

Rachel D. Johnson
KATZ  KORIN CUNNINGHAM, P.C.
rjohnson@kkclegal.com